STATE OF MAINE                    UNIFIED CRIMINAL COURT
KENNEBEC, SS.                     AUGUSTA
                                 DOCKET NO. CR-18-140


STATE OF MAINE

    V.

COREY SCHUTZ,
            Defendant                **DECISION ON MOTION TO**
                                     **RECONSIDER**

HOLLY HOLMES,
            Petitioner

    V.

STATE OF MAINE


The matter before the court is the Motion To Reconsider filed by Petitioner Holly Holmes from the court's Decision and Order dated April 8, 2019 denying her Motion For Return Of Seized Property.

Ms. Holmes contends that the court applied the wrong legal standard when it used 15 M.R.S. § 5826 rather than requiring the State to pursue a civil forfeiture under 15 M.R.S. § 5822. The court disagrees.

Title 15 M.R.S. § 5821 describes what property is subject to forfeiture by the State and includes money "furnished or intended to be furnished by any person in exchange for a scheduled drug in violation of Title 17-A, chapter 45; all proceeds traceable to such an exchange, and all money, . . ., used or intended to be used to facilitate any violation of Title 17-A, chapter 45." 15 M.R.S. § 5821(6). An exception is explicitly recognized in section 5821(6)(A) for the following:

> No property may be forfeited under this subsection, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

If property is subject to forfeiture, the State may file a civil petition for forfeiture. At any hearing, the State has the burden of proving by a preponderance of the evidence "all material facts" and "the owner of the property, or other person claiming under the property has the burden of proving by a preponderance of the evidence all exceptions set forth in section 5821. . . ." 15 M.R.S. § 5822(3). In other words, if a civil petition for forfeiture is filed the person claiming ownership of the property must prove his or her interest in the property and that any act or omission was done without his or her knowledge or consent. At a minimum is the requirement that the person claiming ownership of the property must prove that he or she actually has an ownership interest in it.

Alternatively, the State may proceed by way of a criminal forfeiture by indictment or complaint against the property subject to seizure. 15 M.R.S. § 5826(2). That is how the State proceeded in this case. In this case the Defendant, Corey Schutz, admitted that the property in question was subject to seizure and forfeiture. As a result, "[a]ll rights, privileges, interest and title in the property subject to forfeiture . . . vest[ed] in the State . . . ." 15 M.R.S. §5826(1). Through that admission and the other evidence presented at the hearing in this matter, the State proved by a preponderance of the evidence that the money in question was subject to forfeiture as required by 15 M.R.S. § 5826(4)(A). The criminal forfeiture statute also provides for an "ancillary" hearing for a person, like Ms. Holmes, "asserting a legal interest in the property . . . to adjudicate the validity of any alleged interest in the property." 15 M.R.S. § 5826(5).

2

The "ancillary" hearing must be heard by the court without a jury. The statute, 15 M.R.S. § 5826(5)(A), provides, in pertinent part:

> The court shall issue or amend a final order of forfeiture in accordance with its determination if, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that:
>
> A. The petitioner has a legal right, title or interest in the property and the right, title or interest renders the order of forfeiture invalid in whole or in part because the right, title or interest was vested in the petitioner rather than any defendant or was superior to any right, title or interest to the exclusion of any defendant at the time of the commission of the acts that gave rise to the forfeiture of the property under this section.

This is the statutory provision the court applied in its Decision and Order of April 8, 2019 and, in the court's view, encompasses the exception to forfeiture found in section 5821(6)(A). Moreover, under either section 5822's civil petition procedure or the criminal forfeiture process authorized by section 5826, the person claiming ownership in the property subject to forfeiture has the burden of proving that ownership. Accordingly, the court rejects the argument advanced by Ms. Holmes that the statutory scheme unconstitutionally shifts the burden to her.

Furthermore, the court did not require Ms. Holmes to prove that the funds in question "were not proceeds from drug activities." *Motion To Reconsider at 3, ¶ 6.* Rather, the court only required Ms. Holmes to prove that she had an ownership interest in the funds, which she failed to do because the court found her testimony and evidence unbelievable. Moreover, the court specifically found that the sum of $20,294 was subject to forfeiture as proceeds traceable to a violation of Title 17-A, chapter 45.

Lastly, Ms. Holmes has misconstrued the court's factual findings in its Decision and Order. The purse containing the MDEA "buy" money was not found

3

in the safe, but was the purse or pocketbook being carried by Ms. Holmes when the officers arrived to execute the search warrant. The purse-like bag containing approximately $20,000 was found in the safe. The court was not confused about that, although its Decision and Order could have been clearer in that regard. In addition, the court's finding that there was "strong evidence that Corey Schutz was using 20 Preble Hill Road as a base from which he would depart and to which he would return after conducting drug transactions, including 10 in a single day, and that at least some of the cash inside the safe was traceable to drug trafficking," was referring to the fact that other cash inside the safe was determined to properly belong to Mr. McCaslin.

## CONCLUSION

The entry is:

Petitioner's Motion To Reconsider is DENIED.

The sum of $20,294 is Ordered forfeited to the State of Maine.

Dated: May 10, 2019

William R. Stokes
Justice, Superior Court

Entered on the docket    5/10/19

4

STATE OF MAINE
KENNEBEC, SS.

UNIFIED CRIMINAL COURT
AUGUSTA
DOCKET NO. CR-18-140

STATE OF MAINE

V.

COREY SCHUTZ,
      Defendant

**DECISION AND ORDER**
15 M.R.S. §5826

HOLLY HOLMES,
      Petitioner

V.

STATE OF MAINE

## INTRODUCTION

The matter before the court for resolution is the petition of Holly Holmes for the return of the sum of $20,294.00[1] in cash seized from the safe at her residence at 20 Preble Hill Road in Vassalboro. The court held an evidentiary hearing on March 4, 2019 and received the testimony of the following witnesses during the State's initial presentation: MDEA Agent Katelyn Nichols; MDEA Agent Ronnie Blodgett; Sgt. Lowell Woodman, Jr. The court denied the Petitioner's motion for summary judgment as the close of the State's case.

The court received testimony from the following witnesses called by the Petitioner: Corey Schutz (Petitioner's son); Agent Nichols; Sgt. Woodman; John

---

[1] Holmes's motion requests the return of $20,456.00 but no evidence was presented to explain the additional $162.

McCaslin (Petitioner's live-in partner); Kevin Holmes (Petitioner's former husband); Petitioner Holly Holmes. The court also admitted Petitioner's Exhibit 1 (University of Maine tuition bills). Sgt. Woodman was called by the State in rebuttal and Ms. Holmes was recalled in sur-rebuttal.

The court has received and reviewed the parties' written closing arguments, received on March 18, 2019. Based on its evaluation of the testimony and evidence, and after consideration of the arguments of counsel, the court makes the following findings of fact.

## FACTS

Corey Schutz (D.O.B. 3/24/1994) is the son of Petitioner Holly Holmes, who resides at 20 Preble Hill Road in Vassalboro with John McCaslin and his two sons. Kevin Holmes is Corey's father. On the Indictment in this case and on other documents filed with the court and on his license, Corey's address is listed as 144 McNally Road in Clinton, his father's address.

In December 2017, MDEA was engaged in an investigation of Corey Schutz for trafficking in scheduled drugs. On December 7 and 11, 2017, Agent Nichols was conducting surveillance of Schutz as he engaged in a controlled purchase of drugs and then returned to the residence at 20 Preble Hill Road. On January 24, 2018, Agent Nichols conducted surveillance of Schutz over the course of 8 hours during which he engaged in 10 suspected drug transactions and then returned to 20 Preble Hill Road.

On January 25, 2018, agents executed search warrants at 144 McNally Road in Clinton and 20 Preble Hill Road in Vassalboro. A K-9 "sniff" search of the house in Clinton was negative and no evidence of drug activity was discovered at that location. Schutz was arrested a short distance from the Clinton residence. He had illegal drugs and over $2500 in cash on him, including "buy" money belonging to MDEA. He was told that agents were also searching the Vassalboro address. In

speaking with Agents Nichols and Blodgett, he told them that the $2500 of cash on him was for buying more drugs. He acknowledged that he had made "a lot" of money faster than he had expected, and he had put money away "for a day like this." When asked where the money was, Schutz did not answer directly but said, in substance, "you guys probably found it today."[2]

At 20 Preble Hill Road, the K-9 "hit" on the safe which was opened with the cooperation of Mr. McCaslin. Inside, agents found a blue money bag containing approximately $15, 000 in cash, a couple of envelopes with cash inside, and a purse containing approximately $20,000 in cash. Ms. Holmes was present at the time of the search. Her purse was searched and cash, including some MDEA "buy" money, was found. Mr. McCaslin claimed ownership of the money in the blue money bag and the envelopes. Ms. Holmes claimed ownership of the money in the purse as being hers from when she worked as an exotic dancer.

Corey Schutz testified at the hearing that he actually resided at 2733 Riverside Drive in Vassalboro and that he seldom went back to his mother's place. He said that he kept his drugs and money at the Riverside Drive address, which was not searched by police. He claimed that by "a lot" of money he was referring to the $2500 he had on his person. He denied putting any money inside the safe at 20 Preble Hill Road. He was unable to produce any corroborating evidence that he actually resided at 2733 Riverside Drive.

John McCaslin testified that the money in the purse-like bag – the money in dispute here[3] - belonged to Ms. Holmes, which she earned as a dancer. He said that

---

[2] Schutz entered pleas of guilty to Counts 3 and 4 of the Indictment charging Class B Unlawful Trafficking in cocaine and fentanyl respectively. He also entered admissions to Counts 4 – 8 of the Indictment seeking criminal forfeiture of cash and a motor vehicle.

[3] Prior to the hearing, the State and Mr. McCaslin reached an agreement for the return of the money in the blue money bag and the envelopes.

Ms. Holmes paid none of the bills and was a saver who paid cash for everything including her tuition for nursing school. Kevin Holmes also talked about the saving habits of Ms. Holmes.

Ms. Holmes testified that the cash in the purse inside the safe was hers. She said that she pays for her cell phone but virtually nothing else in the household. She has always distrusted banks and lives a "cash" life. The MDEA "buy" money found in her purse was given to her by her son as a birthday present. According to Ms. Holmes, Corey seldom came to 20 Preble Hill Road and did not have access to the safe.

## DISCUSSION

The parties appear to agree that the governing law is found in 15 M.R.S. §5826(5), which provides that it is Ms. Holmes' burden by a preponderance of the evidence to show the following:

> (A) The petitioner has a legal right, title or interest in the property and the right, title or interest renders the order of forfeiture invalid in whole or in part because the right, title or interest was vested in petitioner rather than in any defendant or was superior to any right, title or interest to the exclusion of any defendant at the time of the commission of the acts that gave rise to the forfeiture of the property under this section.

The court concludes that the Petitioner has failed to meet her burden of proof to a "more likely than not" standard. In reaching this conclusion, the court finds that there was strong evidence that Corey Schutz was using 20 Preble Hill Road as a base from which he would depart and to which he would return after conducting drug transactions, including 10 in a single day, and that at least some of the cash inside the safe was traceable to drug trafficking. Ms. Holmes had MDEA "buy" money on her. Two significant amounts of cash were found inside the safe. The safe was the lone "hit" by the K-9. Schutz was told by agents that agents were searching 20

4

Preble Hill Road and remarked that he had made "a lot" of money dealing drugs faster than he had expected and that the police had probably found it already.

The court was not persuaded by the evidence offered by the Petitioner. Corey Schutz's claim that he lived on Riverside Drive was unsupported by any evidence other than his say-so. The court believes that such supporting and corroborating evidence would have been relatively simple to obtain, if it existed.

The testimony of Ms. Holmes and Mr. McCaslin that she stashed thousands and thousands of dollars in cash inside the safe and paid no bills whatsoever, was not believable.

The court finds that Ms. Holmes has failed to carry her burden of proof as required by 15 M.R.S. §5826(5). The court further finds that the sum of $20,294 is subject to criminal forfeiture to the State of Maine as proceeds traceable to a violation of or to facilitate a violation of 17-A M.R.S. chapter 45.

## CONCLUSION

The entry is:

Petitioner's Motion For Return of Seized Property is DENIED.

The sum of $20,294 is Ordered forfeited to the State of Maine.

Dated: April 8, 2019

William R. Stokes
Justice, Superior Court

5